UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF DELAWARE<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT

The United States of America, by authority of the Attorney General and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil environmental action under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), seeking recovery of response costs incurred by the United States in connection with the release or threatened release of hazardous substances at Landfill Area #1 within the Governor Bacon Health Center / Fort DuPont State Park located in New Castle County, Delaware ("Site"), which Defendant the State of Delaware owns.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and the Defendant pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and under 28 U.S.C. §§ 1331 and 1345.

1

3. Venue is proper in this District under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c), because the claims arose, and the threatened and actual releases of hazardous substances occurred, in this judicial district.

## DEFENDANT

4. Defendant has owned the Site since 1947.

5. Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

6. Defendant is an "owner" of the Site within the meaning of CERCLA Section 101(20)(A), 42 U.S.C. § 9601(20)(A).

## GENERAL ALLEGATIONS

**Site Background**

7. The Site encompasses approximately 10 to 20 acres that were historically used as a dump area within the Governor Bacon Health Center / Fort DuPont State Park ("the Property").

8. The Property stretches across approximately 380 acres in New Castle County, Delaware. The Property is bounded by the Delaware River to the east, the Chesapeake and Delaware Canal to the south, and a branch of the Canal to the west and north.

9. Beginning with the construction of a military battery in 1864, portions of the Property were developed into numerous batteries and support buildings that eventually became Fort DuPont.

10. Fort DuPont went through various phases of construction and use between the Civil War era and the First and Second World Wars.

11. In approximately 1937, a portion of the Property became a dump area for Fort DuPont. This dump area came to be known as Landfill Area #1, which is the Site at issue in this CERCLA action.

12. Ten years later, in January 1947, Defendant acquired the Property—including the Site—from the United States through a quitclaim deed.

13. Defendant began operating the Governor Bacon Health Center on the Property in 1948. In 1992, Defendant turned portions of the Property into Fort DuPont State Park.

14. Defendant manages Fort DuPont State Park through the Delaware Department of Natural Resources and Environmental Control ("DNREC").

15. The Site is located in the Fort DuPont State Park portion of the Property, along the bank of the Delaware River. The easternmost boundary of the Site is within the tidal reach of the Delaware River and is submerged by high tide.

16. Over time, the Delaware River eroded the Site's shoreline and exposed discarded materials.

17. Walking trails in Fort DuPont State Park gave the public access to the Site and discarded materials like demolition debris, metal objects, objects associated with military operations, and objects associated with occupation of the Property over time.

18. Aerial photographs of the Property show various levels of ground disturbance at, and road access to, the Site between 1947 and 1986.

19. In 1985, a brush fire at the Site exposed approximately 14 gas cylinders containing chemical substances. After Defendant had the cylinders removed, approximately one foot of fill was placed on the Site.

**Response Action**

20. The 1985 Site fire was followed by a series of investigations into potential hazardous substances and/or ordnance at the Site and across the Property.

21. In 2003, DNREC sampling activities revealed heightened concentrations of lead and other substances within or near the Site. Lead concentrations at the Site ranged above 1,000 milligram per kilogram ("mg/kg"), which is the DNREC Uniform Risk-Based Standard for lead in an industrial land use setting.

22. EPA carried out a preliminary removal site evaluation pursuant to Section 300.410 of the National Oil and Hazardous Substances Pollution Contingency Plan ("National Contingency Plan"), 40 C.F.R. § 300.410, between December 2011 and December 2012.

23. During the preliminary evaluation, EPA encountered metallic lead in various forms at the Site, including as casing around electrical wire, as melted globules, and as small fragments.

24. EPA's sampling activities during the preliminary evaluation indicated concentrations of lead ranging up to approximately 55,500 mg/kg at the Site. These concentrations exceeded concentrations attributable to the natural environment.

25. Lead is a hazardous substance as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), because it is listed in 40 C.F.R. § 302.4.

26. On January 28, 2014, EPA approved an Action Memorandum for a time-critical removal action at the Site. EPA initiated the removal action on April 7, 2014.

27. EPA's activities throughout the removal action included excavating and removing lead-contaminated materials primarily from the tidal zone of the Site. Those materials were then transported and disposed of offsite.

28. As part of the removal action, EPA also constructed a revetment (i.e., a retaining wall) to armor the remaining landfill and to minimize future erosion along the bank of the Delaware River.

29. The last lead-contaminated material was transported offsite on October 26, 2014.

30. EPA completed the removal action on March 26, 2015. EPA returned to the Site on April 28, 2015, to document final Site conditions.

31. On August 2, 2016, the United States sent Defendant a notice of potential liability that demanded payment of response costs incurred pursuant to CERCLA Section 107(a)(1), 42 U.S.C. § 9607(a)(1).

32. As of December 6, 2019, the United States had incurred approximately $3,779,984.60, including $136,575.03 of prejudgment interest.

33. The United States has incurred costs of removal actions not inconsistent with the National Contingency Plan in responding to the release or threatened release of hazardous substances at and from the Site, within the meaning of CERCLA Sections 101(23), (24), and (25), 42 U.S.C. § 9601(23)-(25).

## CLAIM FOR RELIEF

34. Paragraphs 1-33 are re-alleged and incorporated herein by reference.

35. Section 107(a) of CERCLA provides in pertinent part that:

(1)-(4) the owner and operator of a vessel or a facility . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan.

42 U.S.C. § 9607(a).

36. The Site is a "facility" within the meaning of CERCLA Section 101(9), 42 U.S.C. § 9601(9).

37. "Hazardous substances" within the meaning of CERCLA Section 101(14), 42 U.S.C. § 9601(14), including lead, were found at the Site.

38. There were "releases" or the threat of "releases" of hazardous substances into the environment at the Site, within the meaning of CERCLA Section 101(22), 42 U.S.C. § 9601(22).

39. Defendant is the owner of the Site under CERCLA Section 107(a)(1), 42 U.S.C. § 9607(a)(1).

40. The United States has incurred costs for a "response," as defined in CERCLA Section 101(25), 42 U.S.C. § 9601(25), in investigating and removing the release or threatened release of hazardous substances at the Site.

41. The response costs incurred by the United States at the Site were not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

42. Pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), Defendant is jointly and severally liable to the United States for all response costs incurred by the United States in connection with the Site, including enforcement costs and interest on response costs for which a demand for payment has been made.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff the United States respectfully requests that the Court:

1. Enter judgment in favor of the United States and against Defendant, jointly and severally, for all response costs incurred by the United States, including prejudgment interest, for response actions in connection with the Site;

2. Award the United States the costs of this action, including its costs of attorney time; and

3. Grant such other relief as the Court deems appropriate.

Respectfully submitted,

JONATHAN D. BRIGHTBILL
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division

*/s/ Devon A. Ahearn*
DEVON A. AHEARN
CA State Bar Number: 307275
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-2717
Email: devon.ahearn@usdoj.gov


DAVID C. WEISS
United States Attorney

*/s/ Laura D. Hatcher*
LAURA D. HATCHER
DE State Bar Number: 5098
Chief, Civil Division
United States Attorney's Office
District of Delaware
1313 N. Market St., Suite 400
Wilmington, DE 19801
Phone: (302) 573-6205
Email: laura.hatcher@usdoj.gov